# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAMS VEGA VICTORIANO,<br><br>Defendant. | 8:19CR129<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW |

This matter is before the Court for Findings of Fact and Conclusions of Law pursuant to Federal Rule of Criminal Procedure 23(c), following a nonjury trial held on August 27, 2019. At trial, the United States was represented by Assistant United States Attorneys Jody B. Mullis and Kelli L. Ceraolo. The Defendant, Williams Vega Victoriano, was represented by Assistant Federal Public Defender Michael J. Hansen.

## SUPERSEDING INDICTMENT

The Superseding Indictment alleges that on or about March 17, 2019, in the District of Nebraska, Defendant Williams Vega Victoriano, while knowingly being an alien illegally and unlawfully in the United States, did knowingly possess in and affecting interstate and foreign commerce, a firearm, to wit, a Taurus G2C 9 mm handgun with serial number TLN51863, said firearm having been shipped and transported in interstate and foreign commerce in violation of 18 U.S.C. §§ 922(g)(5)(A), 924(a)(2). Vega Victoriano pleaded not guilty to the charge.

## FINDINGS OF FACT

The Court makes the following findings of fact. Any finding of fact that is more properly considered a conclusion of law should be deemed as such. Unless otherwise

indicated, all findings of fact relate to the time relevant to the facts alleged in the indictment.

**I.      Stipulated Facts**

The parties entered into the following stipulations which are deemed proven and uncontroverted. Gov't's Exs. 60–64.

1. Vega Victoriano was born in Mexico and is a citizen of Mexico. He is not a United States citizen and has never been a United States citizen. He is an alien as defined by 8 U.S.C. § 1101(a)(3) (The term "alien" means any person not a citizen or national of the United States.). Vega Victoriano was an alien, as defined by 8 U.S.C. § 1101(a)(3), during the time period of November 1, 2018, to March 31, 2019.

2. On November 24, 2018, deputies of the Cass County, Nebraska, Sheriff's Department made contact with Vega Victoriano, while he was not in law enforcement custody, outdoors at a location near Louisville, Nebraska, in Cass County, Nebraska. The deputies arrested Vega Victoriano, took him into law enforcement custody, and transported him to the Cass County jail.

3. Vega Victoriano was transferred to the custody of Immigration and Customs Enforcement (ICE) on or about November 29, 2018. He remained in ICE custody until he bonded out of ICE custody on or about December 19, 2018.

4. On March 17, 2019, in Omaha, Nebraska, Vega Victoriano was knowingly in possession of a Taurus 9 mm handgun with serial number TLN51863.

5. On March 17, 2019, the Taurus 9 mm handgun with serial number TLN51863 was operable; it functioned as designed; and it was able to discharge ammunition.

6. The Taurus 9 mm handgun with serial number TLN51863 is a firearm as defined by 18 U.S.C. § 921(a)(3).

7. The Taurus 9 mm handgun with serial number TLN51863 was manufactured in Brazil, outside the United States and the state of Nebraska. The firearm affected interstate and foreign commerce.

8. On March 17, 2019, Vega Victoriano did not have a permit to carry a concealed handgun as required to carry a concealed handgun in Nebraska under the Concealed Handgun Permit Act, Nebraska Revised Statute Sections 69-2427 to 69-2449. He never applied for a permit to carry a concealed handgun under that Act.

9. Vega Victoriano never registered a concealable firearm with the Omaha, Nebraska, Police Department as required under Omaha Municipal Code § 20-251 to possess a concealable firearm inside the Omaha, Nebraska, city limits.

## II. Trial Testimony and Evidence

10. Scott Alan Mollner is a deportation officer with ICE. ICE is a division of the Department of Homeland Security (DHS).

11. On November 26, 2018, Officer Mollner was notified by officials from the Cass County jail in Cass County, Nebraska, that Vega Victoriano was in their custody and might be in the United States illegally.

12. Officer Mollner interviewed Vega Victoriano on November 26, 2018. Officer Mollner does not speak Spanish, but he has learned through training to ask the questions for a preliminary interview with a detainee in Spanish and to understand common answers. During the interview, Officer Mollner asked Vega Victoriano three questions in Spanish:

    1. What country are you from/born?
    2. Do you have any papers or documents to be in the United States legally?
    3. Are you here in the United States legally or illegally?

13. Vega Victoriano responded, in Spanish, that he was born in Mexico, he did not have papers to be in the United States legally, and he was in the United States illegally.

14. On November 29, 2018, ICE took Vega Victoriano into custody. Carl Wisehart, a deportation officer with ICE, interviewed Vega Victoriano in English.

15. Vega Victoriano told Officer Wisehart that his country of origin was Mexico. Vega Victoriano stated that he entered the United States on foot illegally in order to find work. He stated that he did not have any pending applications for lawful status, nor did he fear returning to Mexico.

16. Officer Wisehart provided Vega Victoriano with multiple documents. First, Officer Wisehart gave Vega Victoriano a document entitled "Notice of Rights and Request for Disposition." Gov't's Ex. 1. Officer Wisehart read the document to Vega Victoriano. The first sentence of the document stated,

"You have been arrested because immigration officers believe that you are illegally in the United States." The document set forth three options as to how Vega Victoriano could proceed, and it had a space for him to initial next to his choice. He initialed to indicate that he requested a hearing before the immigration court to determine whether he could remain in the United States. He signed the document at the bottom and affixed his fingerprint next to his signature.

17. Officer Wisehart gave Vega Victoriano a document entitled "Notice to Appear" (NTA). Gov't's Ex. 3. The NTA is the charging document used by the Government in immigration court removal proceedings. Officer Wisehart read the NTA to Vega Victoriano. The NTA stated, "You are an alien present in the United States who has not been admitted or paroled." It contained the Government's charges against Vega Victoriano in the removal proceedings, stating:

    1. You are not a citizen of the United States;
    2. You are a native of MEXICO and a citizen of MEXICO;
    3. You arrived in the United States at an unknown location, on an unknown date;
    4. You were not then admitted or paroled after inspection by an Immigration Officer.

18. The NTA went on to state,

    On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law: 212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

5

19. Page two of the NTA stated, "This copy of the notice to appear served upon you is evidence of your alien registration while you are under removal proceedings, you are required to carry it with you at all times." Vega Victoriano signed at the bottom of the second page under the certificate of service and affixed his fingerprint on the page.

20. Officer Wisehart also presented Vega Victoriano with a document entitled "Warrant for Arrest of Alien." Gov't's Ex. 4. The purpose for this document is to provide notice to the subject of the warrant. It stated the grounds for the warrant were that Officer Wisehart determined that Vega Victoriano was removable from the United States based upon:

> the execution of a charging document to initiate removal proceedings against the subject;
>
> biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law; and/or
>
> statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law.

21. Officer Wisehart read these paragraphs to Vega Victoriano and explained that the first paragraph referred to the NTA, the second paragraph referred to his fingerprint and records search, and the third paragraph referred to the statements Vega Victoriano made.

22. Officer Wisehart gave Vega Victoriano a document entitled "Notice of Custody Determination." Gov't's Ex. 6. This document informed Vega Victoriano that he could be released from ICE custody upon the payment of

a $14,000 bond and he would be subject to intensive supervision. Vega Victoriano indicated on the document that he requested a bond review by the immigration court. He signed and affixed his fingerprint to the document.

23. On December 17, 2018, Vega Victoriano's bond was reviewed by the immigration court and reduced to $7,000 with no intensive supervision. Both parties waived appeal. Gov't's Ex. 10. The terms of the bond were set out in a document entitled "Immigration Bond." Gov't's Ex. 7. The document described four types of bonds. Section G(1) of the document described Vega Victoriano's bond and was entitled "Bond Conditioned Upon the Delivery of an Alien." The obligor's duties under the bond were as follows:

> In consideration of the granting of the application of the above alien for release from custody under a warrant of arrest issued by the Attorney General charging that he/she is unlawfully in the United States, provided there is furnished a suitable bond as authorized by Section 236 and/or Section 241 of the Immigration and Nationality Act, the obligor hereby furnishes such bond with the following conditions if: (1) the alien is released from custody and if the obligor shall cause the alien to be produced or to produce himself/herself to an immigration officer or an immigration judge of the United States, as specified in the appearance notice, upon each and every written request until exclusion/deportation/removal proceedings in his/her case are finally terminated; (2) the said alien is accepted by the DHS for detention or deportation/removal; or (3) the bond is otherwise canceled, this obligation shall terminate. If, however, the obligor fails to surrender the alien in response to a timely demand while the bond remains in effect, the full amount of the bond (see Paragraph C above) becomes due and payable. The obligor further agrees that no order issued by or under the authority of the Attorney General or Secretary of Homeland Security by virtue of which issuance or execution of any order of

7

deportation/removal is or may be deferred, shall be in any manner construed to impair or render void this obligation or any part thereof.

24. The bond document was signed by the obligor. The obligor also filled out a document entitled "Bond Worksheet (Obligor)". Gov't's Ex. 9. This worksheet described the duties of the obligor and stated, "The bond will remain in effect until the case is resolved. This means until the subject is found to be legal in the United States or until a legal departure is verified." The bond documents do not state that Vega Victoriano's immigration status had changed. The immigration court did not discuss Vega Victoriano's status during the bond review.

25. Vega Victoriano was then released on this bond.

26. Jason Francke is a deportation officer with ICE. Officer Francke became the case agent in the matter involving Vega Victoriano.

27. On March 27, 2019, Officer Francke took Vega Victoriano into ICE custody to revoke his bond following an incident involving a firearm in Omaha, Nebraska. When Officer Francke arrested Vega Victoriano, Vega Victoriano was in possession of three forms of Mexican identification. Gov't's Ex. 16.

28. Officer Francke was the custodian of Vega Victoriano's Alien File, more commonly referred to as an A-File. In Officer Francke's review of Vega Victoriano's A-File, Officer Francke found no records or applications for Visas, naturalization, asylum, or green cards on Vega Victoriano's behalf. Officer Francke also became aware of a document generated by Nancy Holling, Supervisory Records Information and Management Specialist for

the United States Customs and Immigration Services, certifying that DHS had no record of naturalization or any application or petition for Vega Victoriano.

## ELEMENTS

The crime of being an illegal alien in possession of a firearm as charged in Count I of the Superseding Indictment has three elements, which are:

*One*, on or about March 27, 2019, the Defendant knowingly was an alien illegally or unlawfully in the United States;

*Two*, the Defendant knowingly possessed a firearm, that is a Taurus G2C 9 mm handgun with serial number TLN51863, while he was an alien illegally or unlawfully in the United States, and;

*Three*, the firearm was transported across a state line at some point during or before the Defendant's possession of it.[1]

## BURDEN OF PROOF

The Government bears the burden of proving, beyond a reasonable doubt, each essential element of the crime charged.

## CONCLUSIONS OF LAW

The Court finds that the Defendant, Williams Vega Victoriano, is guilty of Count I of the Superseding Indictment. The Government has proved each element of the offense beyond a reasonable doubt. The Defendant has "admitted to every factual element of the

---

[1] The Eighth Circuit Model Jury Instructions do not include an instruction for Illegal Alien in Possession of a Firearm. Model Instruction 6.18.922A provides the elements for Felon in Possession of a Firearm. These elements have been modified to suit the charge in this case. Additionally, due to *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the mens rea of knowing is included as to the defendant's immigration status.

charged offense save that he knew he was illegally and unlawfully in the United States on March 17, 2019 when he possessed the gun." Def.'s Br. at 2, ECF No. 52.

On November 26, 2018, Vega Victoriano told Officer Mollner that he was in the United States illegally. On November 29, 2018, Vega Victoriano told Officer Wisehart that he entered the United States illegally. Officer Wisehart provided Vega Victoriano with a warrant for his arrest and NTA. The NTA was a charging document and informed Vega Victoriano that removal proceedings had begun against him because it was believed that he was illegally in the United States. The NTA stated that it was "evidence of [Vega Victoriano's] alien registration while [he was] under removal proceedings." Officer Wisehart discussed the grounds stated in the warrant and NTA with Vega Victoriano and informed him that he could be released on a bond of $14,000 until he was removed from the United States or the immigration court found him to be lawfully in the United States. Vega Victoriano remained in ICE custody until December 17, 2018, when the immigration court reviewed Vega Victoriano's bond and reduced the bond to $7,000. The immigration court did not discuss the topic of Vega Victoriano's status. At no point did any government official tell Vega Victoriano that he was lawfully in the United States.

Vega Victoriano did not act as though he believed himself to be lawfully in the United States. He did not follow the lawful process to possess a firearm. He did not apply for a permit to carry a concealed handgun; nor did he register a concealable firearm with the OPD. These failures evidence that Vega Victoriano was still aware of his status as illegally or unlawfully in the United States.

The Government has met its burden of proving each element beyond a reasonable doubt. Accordingly,

IT IS ORDERED:

1. The Defendant, Williams Vega Victoriano, is guilty of Count I of the Superseding Indictment;

2. A separate Order on Sentencing Schedule will be issued; and

3. Judgment will be entered accordingly.

Dated this 5th day of September 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge